IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHERIE PHILLIPS, et al., | ) | Civ. No. 06-00628 SOM/KSC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| SANDERSON BECK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

Plaintiff Cherie Phillips ("Phillips") and Defendant Sanderson Beck ("Beck"), both of whom appear pro se in this case, are book authors. Phillips's book is the Wisdom Bible of God, and Beck's book is the Wisdom Bible From Ancient China, India, Greece, the Middle East, and Rome.

On November 22, 2006, Phillips filed her verified Complaint against Beck and Defendant World Peace Communications ("World Peace").[1] The Complaint asserts that Defendants: (1) infringed on Phillips's copyright in her book, in violation of the Copyright Act, 17 U.S.C. § 101 et seq.; and (2) infringed on the unregistered trademark in the short title of her book, "Wisdom Bible," and unfairly competed with her, in violation of

---

[1] The Stoic Church of Philosophy is named as a Plaintiff in the Complaint, but is without counsel. The court therefore construes all claims as asserted by Phillips only. World Peace is also without counsel, and the court construes papers that Beck has filed on its behalf as applicable only to Beck as an individual.

section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Phillips prays for injunctive relief and damages.

On March 1, 2007, Beck filed a motion for summary judgment, arguing that there is "no evidence that [he] copied anything from the work of Phillips."  Beck contends that the term "Wisdom Bible," which appears in the title of both books, is a "common term" that "cannot be removed from the public domain."  Beck also points out that the books are dissimilar, as, for example, Beck does "not capitalize the first letter of every line" and as the "numbering system[s]" are different.

Phillips notes that Beck had a reasonable opportunity to view her book because it was distributed worldwide and was available on the internet for free.  She says that the books are similar because, among other things, they have the same short title and are written in the same poetic meter.  The "Wisdom Bible" short title is, according to Phillips, not in the public domain because it is "so rare" and has "secondary meaning" in that it is "exclusively associated with the Stoic religion of the Stoic Church of Philosophy."

Because Beck does not meet his initial burden as a movant on this summary judgment motion, the court denies the motion.  This denial is without prejudice to the timely bringing of any motion on a fuller record.

II.      LEGAL STANDARD.

Summary judgment shall be granted when

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on the mere allegations in the pleadings and instead must "set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion."). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134 (citation omitted). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

III.     BACKGROUND FACTS.

Phillips alleges that she founded the Stoic Church of Philosophy in 1995. Complaint ¶ 9. She says she wrote Wisdom Bible of God, which is "known by the short title, 'Wisdom Bible,'" for the Stoic Church in 1997 and copyrighted it in 1999. Id.; see Opp. at 14.[2]  Phillips describes her book as the first

---

[2] Beck's memorandum in support of his motion says it is written under penalty of perjury. The court considers the parties' factual statements in memoranda and verified pleadings as evidence for purposes of the present motion. Accord Layaoen v. Haw. Parole Auth., Civ. No. 06-00586 SOM/KSC, 2006 WL 3246619, at *1 (D. Haw., Nov. 7, 2006) ("The court must construe pro se pleadings liberally and afford the pro se litigant the benefit of any doubt."); cf. Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").

5

book to "combine philosophy and religion into a biblical expression." Opp. at 13 (describing the book as a "biblical expression of combining religion and philosophy, including classical philosophy and philosophy of science, health nutrition"). Phillips alleges that the first copy of her book was sold in Canada in 1999 and that she thereafter "submitted copies to the Virginia State Library." Opp. at 2. She also says that she handed out copies of her book in California in 2000 and that it has been available on the internet for free since 2001. Opp. at 6.

Phillips further alleges that, in May 2006, she discovered Beck's book, which she says uses the same short title as her book. Complaint ¶ 12. However, Beck says he wrote most of his book between 1978 and 1991, and that most of the translations he consulted while writing his book "were from books published before 1991." Motion at 2. Beck alleges that, in June 1996, he put most of his book on his website and that his book is "still available to anyone for free on [his] website." Motion at 3. Beck also says he did not know of Phillips, her website, or her book until he received a letter from her in 2006. Motion at 2.

IV.     ANALYSIS.

    A.  Copyright Infringement.

Beck argues that he is entitled to summary judgment on Phillips's claim for copyright infringement because he did not view a copy of her book before writing his book and, thus, could not have copied her work. Motion at 2. Beck also points out several differences between the books, including that he did "not capitalize the first letter of every line" and that Phillips's book "adopted a different numbering than usual." Motion at 4-5. Phillips responds that, because her book was distributed worldwide and was available on the internet, Beck had a reasonable opportunity to view her book. Opp. at 2, 6. Phillips also argues that various similarities between the books establish that Beck infringed on her copyright. Opp. at 17-19. Because, on the present record, the court is unable to determine whether the two books are substantially similar and, thus, whether Beck infringed on Phillips's copyright, the court denies summary judgment on the copyright claim.

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1076 (9th Cir. 2006). Because Beck does not

dispute Phillips's ownership of a valid copyright in her book,[3] the court turns to the second query--<u>i.e.</u>, whether Beck copied anything that was original to Phillips's work. <u>See</u> <u>id.</u> ("[The plaintiffs'] ownership in the copyright is undisputed; they need only demonstrate a triable issue of fact whether [the defendant] copied anything that was original to their work."). "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 481 (9th Cir. 2000).

Proof of access "requires 'an opportunity to view or to copy plaintiff's work.'" <u>Id.</u> at 482. "This is often described as providing a 'reasonable opportunity' or 'reasonable possibility' of viewing the plaintiff's work." <u>Id.</u> Reasonable access is "more than a bare possibility," and the Ninth Circuit recognizes that "distinguishing a 'bare' possibility from a 'reasonable' possibility" can "present a close question." <u>Id.</u> Reasonable access can be established by circumstantial evidence in one of two ways: "(1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work (such as through dealings with a publisher or

---

[3] Attached to Phillips's opposition memorandum is a copy of the Certificate of Registration regarding her book. <u>See</u> Ex. 3.

record company), or (2) the plaintiff's work has been widely disseminated." Id. at 482.

Beck argues that he did not see Phillips's book, has "never seen a printed copy of the 'Wisdom Bible of God' by Cherie Phillips," and "never heard of Cherie Phillips nor visited her website until after she sent me a letter in 2006 threatening to sue me." Motion at 2. Although this evidence, if true, would indicate that Beck did not actually view Phillips's book, the court need only determine whether Beck had a "reasonable opportunity" to view her book before writing his book. See Three Boys Music Corp., 212 F.3d at 482.

Phillips alleges that Beck had a reasonable opportunity to view Phillips's book because it was distributed internationally in 1999, was entered into the Virginia State Library collection, has been available for free on her website since 2001, and was distributed in California, the state in which Beck lives. Opp. at 2, 5-6. Phillips also alleges that Beck "has extensive computer knowledge" and could have easily searched the internet to discover her book before giving his book the same short title. Opp. at 10, 14. Construing this evidence in the light most favorable to Phillips, the court concludes that a reasonable jury could find that Beck had a reasonable opportunity to view Phillips's work before creating his book. See Porter, 419 F.3d at 891; Campbell, 319 F.3d at 1166. However, because

9

"[n]o amount of proof of access will suffice to show copying if there are no similarities," the court turns to whether the two books are substantially similar.  See Funky Films, Inc., 462 F.3d at 1081; see also Three Boys Music Corp., 212 F.3d at 485.

"To determine whether two works are substantially similar, a two-part analysis--an extrinsic test and an intrinsic test--is applied."  Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1174 (9th Cir. 2003).  "At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury."  Funky Films, Inc., 462 F.3d at 1077.  Summary judgment is appropriate only if "no reasonable juror could find substantial similarity of ideas and expression, viewing the evidence in the light most favorable to the nonmoving party."  Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).  A "plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests."  Funky Films, Inc., 462 F.3d at 1077.

The extrinsic test is objective in nature and recognizes that an author's expression is protected, but not "facts and ideas within a work."  Id. at 1081; see also id. At 1077 ("We must take care to inquire only whether 'the protectable

10

<u>elements, standing alone</u>, are substantially similar." (emphasis in original)); <u>Shaw v. Lindheim</u>, 919 F.2d 1353, 1356 (9th Cir. 1990) (en banc). The extrinsic test "depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed." <u>Funky Films, Inc.</u>, 462 F.3d at 1077. The "measurable, objective elements" that constitute a literary work's expression and that the extrinsic test focuses on are "the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events . . . 'the actual concrete elements that make up the total sequence of events.'" <u>Shaw</u>, 919 F.2d at 1359 (ellipses points in original).

Beck argues that his book differs from Phillips's book in that: (1) Beck did "not capitalize the first letter of every line"; and (2) the two books use different "numbering systems." Motion at 4-5. It is unclear what Beck means by "numbering systems," but even assuming these differences do exist, "[n]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." <u>Shaw</u>, 919 F.2d at 1362. Furthermore, as no party has provided briefing addressing anything more than a few excerpts of Phillips's book, the court is unable to determine what, if any, protectable elements are similar.[4] <u>Accord</u> <u>Funky</u>

---

[4] Phillips submitted an untimely print-out of her entire book on April 6, 2007, one business day before the hearing on this matter. <u>See</u> LR 7.4; <u>see also</u> LR 56.1. The court was not aware of this late filing before the hearing. At the hearing, Beck also stated that he has not seen a copy of Phillips's book,

11

Films, Inc., 462 F.3d at 1077. Beck therefore fails to meet his initial burden of persuasion on this summary judgment motion. See T.W. Elec. Serv., Inc., 809 F.2d at 630.

In opposing the motion, Phillips points to numerous alleged similarities between the books. In support of her opposition memorandum, Phillips submitted three excerpts from her book and three excerpts from Beck's book for a side-by-side comparison. Exs. 9-11, 19. The only argument Phillips makes with respect to these excerpts is that they establish that the books use the "[s]ame poetic meter: dactylic hexameter." Opp. at 7, 11, 15, 17. However, none of the excerpts is written solely or even primarily in dactylic hexameter.

Phillips also points out the following general similarities between the books: (1) same short title; (2) similar cover design; (3) same "combination of philosophy and world religions"; (4) same biblical expression; (5) same "unusual spelling" of Zacharias and Encheiridion; and (6) same "synthesis of ideas from Matthew, Mark, Luke and John to tell a similar story of Christ in a single epic poem." Opp. at 17-19. Without examining Phillips's book, the court is unable to determine if

---

and Phillips confirmed that she had not provided a copy to him. Thus, the court ordered Phillips to provide the court with courtesy copies of her filing and to serve Beck with a copy of her book within ten days of the hearing. Additionally, because Beck had no opportunity to review Phillips's late filing, the court disregards Phillips's print-out for purposes of this motion.

any of these alleged similarities exist, except for the similarity between the books' short titles. However, in the Ninth Circuit, titles "cannot claim statutory copyright." <u>Shaw</u>, 919 F.2d at 1362; <u>see also</u> <u>Chase-Riboud v. Dreamworks, Inc.</u>, 987 F. Supp. 1222, 1231 (C.D. Cal. 1997) ("Titles may not claim statutory copyright."). Rather, any similarity in title is but "one factor in establishing whether the substance of plaintiff's work (not the title) has been copied." <u>Shaw</u>, 919 F.2d at 1362. Summary judgment is denied on the copyright claim.

        B.    <u>Trademark Infringement and Unfair Competition.</u>

Although Beck does not expressly seek summary judgment on Phillips's claims for trademark infringement and unfair competition, he argues that the short title, "Wisdom Bible," "cannot be removed from the public domain." Motion at 5-6. This argument appears to attack the validity of Phillips's alleged trademark in the short title of her book. Phillips contends that "the title, 'Wisdom Bible,' is so rare that it could not possibly be in public domain." Opp. at 22. Because Beck presents only conclusory allegations in support of his argument, the court denies summary judgment on the trademark infringement and unfair competition claims.

To prevail on a claim of trademark infringement, a plaintiff must establish "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the

mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." <u>Dep't of Parks & Recreation for the State of Cal. v. Bazaar Del Mundo, Inc.</u>, 448 F.3d 1118, 1124 (9th Cir. 2006).  Beck presents argument on only the first element, which is also an element of a claim for unfair competition.  Motion at 5-6; <u>see</u> <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't</u>, 174 F.3d 1036, 1046-47 (9th Cir. 1999) ("To resolve whether West Coast's use of 'moviebuff.com' constitutes trademark infringement or unfair competition, we must first determine whether Brookfield has a valid, protectable trademark interest in the 'MovieBuff' mark."); <u>cf.</u> <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1178 (9th Cir. 1988) ("The 'ultimate test' for unfair competition is exactly the same as for trademark infringement:  'whether the public is likely to be deceived or confused by the similarity of the marks.'"); <u>Joujou Designs, Inc. v. Jono Ligne Internationale, Inc.</u>, 821 F. Supp. 1347, 1353 (N.D. Cal. 1992) ("The tests for . . . infringement of a common law trademark, unfair competition under 15 U.S.C. § 1125(a), and common law unfair competition are the same:  whether confusion is likely.").

"Before infringement can be shown, the trademark holder must demonstrate that it owns a valid mark, and thus a protectable interest." <u>KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.</u>, 408 F.3d 596 (9th Cir. 2005); <u>see also</u> <u>Yellow</u>

Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d at 928 (9th Cir. 2005) (noting that the "validity of the trademark is 'a threshold issue'"). There are five categories of trademarks: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful." Yellow Cab Co. of Sacramento, 419 F.3d at 927. "The latter three categories are deemed inherently distinctive and are automatically entitled to protection." Id. A descriptive trademark "can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." Id. Generic trademarks "give the general name of the product" and are "not capable of receiving protection because they identify the product, rather than the product's source." Id. "Whether a mark is generic is a question of fact." Id. at 929. In determining the validity of a trademark, the court must view the trademark "as a whole" because "the composite may become a distinguishing mark even though its components individually cannot." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1135 (9th Cir. 2006) (quoting Cal. Cooler, Inc. v. Loretto Winery, Ltd., 774 F.2d 1451, 1455 (9th Cir. 1985)).

At the hearing on this matter, Phillips explained that her trademark and unfair competition claims are based on her alleged trademark in the short title of her book, "Wisdom Bible." Beck challenges the validity of her trademark, arguing that the

15

short title is generic because it is in the public domain. Motion at 5-6; see Big Island Candies, Inc. v. Cookie Corner, 244 F. Supp. 2d 1086, 1098 (D. Haw. 2003) (noting that generic trademarks are "free for all to use" and are "in the public domain"). However, the determination of whether a trademark is generic is a question of fact, and, without more, Beck's conclusory assertion that the trademark is generic is insufficient to sustain his burden on this motion.[5]  See Walker v. Sumner, 917 F.2d 382, 387 (9th Cir. 1990) (conclusory assertions are insufficient to meet the movant's burden on a summary judgment motion).

The second and "core element" of trademark infringement and unfair competition asks whether "customers are likely to be confused about the source or sponsorship of the products." Reno Air Racing Ass'n, Inc., 452 F.3d at 1135, 1136 ("the legal question is not whether the marks look similar to us but whether they look similar to ordinary consumers of the products"); Corp,

---

[5] Because Beck does not meet his burden on this point, the court need not address Phillips's contention that Phillips's trademark in "Wisdom Bible" has "secondary meaning." Opp. at 23. The court notes, however, that Phillips fails to address the factors pertinent to determining whether a trademark has "secondary meaning":  "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." See Dep't of Parks & Recreation for the State of Cal., 448 F.3d at 1128.

846 F.2d at 1178.  "An eight-factor test--the so-called Sleekcraft factors--guide the assessment of whether a 'likelihood of confusion' exists."  Id. at 1135.  Those factors are:

> (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets.  Not all of the factors are of equal importance or applicable in every case.

Id. at 1136 n.9.  "[D]etermining whether a likelihood of confusion exists at the summary judgement stage is generally disfavored because a full record is usually required to fully assess the facts."  KP Permanent Make-Up, Inc., 408 F.3d at 608.  In the present motion, Beck does not address this second element of Phillips's trademark infringement and unfair competition claims.

Because Beck does not meet his initial burden on this motion with respect to Phillips's alleged trademark in the short title of her book, the court denies summary judgment on Phillips's trademark and unfair competition claims.

C.   Future Motions.

At the hearing on this matter, Beck stated that he would like to be excused from filing any opposition memorandum to motions that Phillips might bring in the future.  Instead, he

17

asked that the court rely on his present motion and memorandum for his position with respect to any motions Phillips might file in this case. Although the court will not search the record on Beck's behalf if he fails to oppose a motion by Phillips, he may rely on the present motion and memorandum in future proceedings by filing an opposition to any future motion that clearly states that he is incorporating the present motion and memorandum. This is an unusual procedure, but Beck appears <u>pro se</u> and says that his burden in opposing future motions might be substantial. The court notes, however, that Beck, as a practical matter, may want to file a new memorandum, whether attached to a new motion he may bring or as an opposition to a motion Phillips may bring. A new memorandum may well make sense in light of Phillips's late submission of her book.

   The court also reminds Beck to comply with Rule 12 of the Federal Rules of Civil Procedure, regarding the filing of an answer or a motion to dismiss. At the hearing, Beck complained about having to litigate in Hawaii and orally moved to transfer the case. The court declined to consider the oral motion, but Beck may file a written motion. In so stating, the court is not suggesting that such a motion would or would not be granted. The court notes that, to date, Beck has not challenged personal jurisdiction over him.

V.     CONCLUSION.

     In light of the foregoing, the court denies Beck's motion for summary judgment, but Beck may bring future motions based on a fuller record than existed when he filed the present motion.


     IT IS SO ORDERED.

     DATED: Honolulu, April 12, 2007.


     /s/ Susan Oki Mollway
     Susan Oki Mollway
     United States District Judge


**Phillips, et al. v. Beck, et al., Civ. No. 06-00628 SOM/KSC; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.**