IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHERIE PHILLIPS, et al.,          )    Civ. No. 06-00628 SOM/KSC
                                  )
            Plaintiffs,           )
                                  )    ORDER GRANTING DEFENDANT'S
     vs.                          )    SECOND MOTION FOR SUMMARY
                                  )    JUDGMENT
SANDERSON BECK, et al.,           )
                                  )
            Defendants.           )
_____    )

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.        INTRODUCTION.

          Before the court is a motion for summary judgment on

copyright and trademark claims.

          Plaintiff Cherie Phillips ("Phillips") and Defendant

Sanderson Beck ("Beck"), both of whom appear pro se in this case,

are book authors.  Phillips's book is the Wisdom Bible of God

("Wisdom Bible of God"), and Beck's book is the Wisdom Bible From

Ancient China, India, Greece, the Middle East, and Rome ("Wisdom

Bible From Ancient China").

          On November 22, 2006, Phillips filed a Complaint

("First Complaint") against Beck and Defendant World Peace

Communications ("World Peace").[1]  The claims made in Phillips's

_____

          [1] The Stoic Church of Philosophy is a named Plaintiff
in the First Complaint, but is without counsel.  The court
therefore construes all claims as asserted by Phillips only.
World Peace is also without counsel, and the court construes
papers that Beck has filed as applicable only to Beck as an
individual.

First Complaint were limited to Beck's <u>Wisdom Bible From Ancient China</u>.

On March 1, 2007, Beck filed a motion for summary judgment ("First Motion").  This court denied Beck's motion for summary judgment, finding that "Beck does not meet his initial burden as a movant on this summary judgment motion."  Order Denying Defendant's Motion For Summary Judgment (April 12, 2007) ("First Order") at 2.

Beck followed up with this Second Motion for Summary Judgment ("Second Motion").

On July 6, 2007, Phillips filed an Amended Complaint. The Amended Complaint, in addition to incorporating the claims from the First Complaint, alleges that an additional publication authored by Beck--<u>Life As A Whole</u>, which shows an alleged copyright date of 1987--infringed on her copyright in <u>Stoic Encheiridion</u>, which was published in 1997.  The Amended Complaint appears to be also complaining that Beck's 2005 <u>Art of Gentle Living</u> infringes on Phillips's <u>Stoic Encheiridion</u>.  The Amended Complaint further asserts that Beck's <u>Confucius and Socrates: Teaching Wisdom</u>, published in 2007, also contains text from his <u>Wisdom Bible From Ancient China</u> and thus may also infringe on Phillips's copyright in her <u>Wisdom Bible of God</u>.  To the extent claims from the First Complaint overlap those in the Amended Complaint, the court deems Beck's Second Motion applicable to the Amended Complaint.

2

Because the court determines that there is no substantial similarity between the text of the <u>Wisdom Bible of God</u> and the text of the <u>Wisdom Bible From Ancient China</u>, the court grants Beck's motion for summary judgment on this copyright claim.  The court also grants Becks summary judgment on his trademark and unfair competition claims concerning the title of his book.

II.     <u>LEGAL STANDARD.</u>

Summary judgment shall be granted when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56©; <u>see also</u> <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102

(9th Cir. 2000).  The burden initially falls upon the moving

party to identify for the court "those portions of the materials

on file that it believes demonstrate the absence of any genuine

issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing

Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under

Rule 56©, its opponent must do more than simply show that there

is some metaphysical doubt as to the material facts."  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The nonmoving party may not rely on the mere allegations in the

pleadings and instead must "set forth specific facts showing that

there is a genuine issue for trial."  Porter v. Cal. Dep't of

Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine

dispute arises if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  California v.

Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); accord Addisu, 198

F.3d at 1134 ("There must be enough doubt for a 'reasonable trier

of fact' to find for plaintiffs in order to defeat the summary

judgment motion.").  "A scintilla of evidence or evidence that is

merely colorable or not significantly probative does not present

a genuine issue of material fact."  Addisu, 198 F.3d at 1134

(citation omitted).  "[I]f the factual context makes the non-

moving party's claim implausible, that party must come forward

4

with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

III.     BACKGROUND FACTS.

Phillips alleges that she founded the Stoic Church of Philosophy in 1995.  Amended Complaint ¶ 9.  She says she wrote her Wisdom Bible of God, which is "known by the short title, 'Wisdom Bible,'" for the Stoic Church in 1997 but lists it as copyrighted in 1999.  Id.  Phillips alleges that, in May 2006, she discovered Beck's book, which she says uses the same short

title as her book.  Amended Complaint Id. at ¶ 12.  Phillips

continues to write additional volumes for the Wisdom Bible of God

in the "same copyrighted expression" as Volume 1.  Opposition to

Defendant's Second Motion for Summary Judgement (June 7, 2007)

("Second Opp.") at § 41.  Phillips's 2007 edition introduces new

material, including discussions of "Lao Tzu, Socrates, Plato, and

many others."  She says the new material "set[s] the stage for

the continuing volumes of sacred texts on philosophy and

religion."  Id.  Phillips submitted excerpts of the 2007 edition

on April 6, 2007, along with Volume 1 of the Wisdom Bible of God.

Both Phillips's and Beck's books purport to merge

various philosophies with religious themes, ideas, and narratives

in what each says is a new "bible" filled with ancient wisdom.

In response to the First Complaint, asserting copyright

infringement, trademark infringement, and unfair competition by

Beck through publication of his Wisdom Bible From Ancient China,

Beck filed a motion arguing that he had not known of Phillips,

her website, or her book until he received a letter from her in

2006.  First Motion at 2.  This court denied Beck's motion

without prejudice, noting that the court did not have a timely

submission of Phillips's book before the hearing.  First Order at

2, 11 n.4.

In Beck's Second Motion, he contends that there is very

little similarity between Phillips's Wisdom Bible of God and his

own <u>Wisdom Bible From Ancient China</u>.  Second Motion at 7-8.  Beck

further argues that the title "Wisdom Bible" should not be

afforded trademark protection, because it is not broadly known

and has not acquired secondary meaning.  <u>Id.</u> at 11-12.  In

response, Phillips challenges Beck's alleged 2002 copyright date.

Second Opp. at 10.  Phillips describes similarities between the

books, pointing specifically to passages on Jesus Christ and

Buddha.  Further, Phillips argues that the <u>Wisdom Bible of God</u> is

broadly known, and that the similar titles between her and Beck's

books will result in public confusion.  Second Opp. at 11, 15-20.

After Phillips filed her Opposition and before this

court heard argument on Beck's Second Motion for Summary

Judgement, Phillips filed an Amended Complaint.  The Amended

Complaint incorporated claims from the First Complaint, and

alleged that two other Beck publications infringed on Phillips's

copyright in <u>Stoic Encheiridion</u>.  The Complaint further alleges

that a 2007 publication by Beck--<u>Confucius and Socrates: Teaching</u>

<u>Wisdom</u>--contains passages from Beck's <u>Wisdom Bible From Ancient</u>

<u>China</u>.  Beck has not yet filed an Answer to Phillips's Amended

Complaint, but to the extent Beck's Second Motion addresses

claims raised in the Amended Complaint, this court deems the

Second Motion responsive to the Amended Complaint.

The protectable elements of Phillips's <u>Wisdom Bible of</u>

<u>God</u> and Beck's <u>Wisdom Bible From Ancient China</u> are not

"substantially similar."  Accordingly, the court grants Beck's motion for summary judgment on this copyright claim.  The court also determines that Phillips has not demonstrated a valid trademark in the title "Wisdom Bible," and the court grants Beck's motion for summary judgment on the trademark and unfair competition claims.

IV.    ANALYSIS.

The court divides the issues before it into two. First, there is the copyright issue of whether the text of Beck's Wisdom Bible From Ancient China infringes on Phillips's copyright in the Wisdom Bible of God.  Second, there is the trademark issue of whether the title of Beck's book infringes on Phillips's rights in the title of her book.

A.   Copyright Infringement.

Beck argues that he is entitled to summary judgment on Phillips's claim for copyright infringement because "very few of those documents [from Phillips's book] contain anything remotely similar" to what is in his own publications.  Second Motion at 3. Beck also points out that any similarities that do exist share the subject matter of Jesus, and that "[t]hose passages that are similar are no more identical than any two translations of the original texts would be expected to be because they are translations of the same source material."  Id.

Phillips responds that Beck's "alleged 2002 publication date has not been proven with verifiable evidence." Second Opp. at 10. This is important because Phillips had a 1999 edition of her Wisdom Bible of God and an expanded edition in 2007. If Beck's Wisdom Bible From Ancient China was published well before Phillips published the expanded edition of her book, Phillips can hardly complain that Beck has copied her expanded edition. Phillips also argues that numerous similarities exist between the two books. Second Opp. at 15-22. Because the court determines that the two works are not substantially similar, the court grants summary judgment on the copyright claim in favor of Beck.

### 1.   Beck's Publication Date.

At the summary judgment stage, courts will consider any evidence that conforms to Rule 56 of the Federal Rules of Civil Procedure. Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001); see also Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). In addition, "[t]he court must construe pro se pleadings liberally and afford the pro se litigant the benefit of any doubt." Layaoen v. Haw. Parole Auth., Civ. No. 06-00586 SOM/KSC, 2006 WL 3246619, at *1 (D. Haw., Nov. 7, 2006). Even when the court applies those liberal principles, the court must conclude that Phillips fails to raise

a genuine issue of fact as to whether Beck's <u>Wisdom Bible From Ancient China</u> was published in 2002.

Beck's Motion states that it is written "under penalty of perjury."  Second Motion at 14.  On February 23, 2007, Beck submitted his book along with his First Motion.   This court considers the factual statements in his memoranda and verified pleadings as evidence for purposes of the present motion.  Beck asserts that his <u>Wisdom Bible From Ancient China</u> was published in 2002.  Second Motion at 7.  The published copy of Beck's book indeed does show a copyright date of 2002.

In her opposition, as at the hearing on Beck's Motion, Phillips argues that Beck has failed to prove his 2002 publication date with "verifiable evidence."  Second Opp. at 10.  Phillips contends that Beck's "printed book is 'not' evidence of any copyright date, as he fraudulently typed the date therein, without any verifiable evidence whatsoever."  <u>Id.</u> at 13.  Phillips argues that Beck created many "alibis" to establish the fraudulent copyright date of 2002.  <u>See id.</u> at 2-7.  Phillips's conclusory allegations fail to raise a genuine issue of material fact regarding Beck's publication date.  <u>See State ex. Rel. Dep't of Transp. v. United States ex. Rel. Dep't of Transp.</u>, 561 F.2d 731, 733 n.4 (9th Cir. 1977) ("Conclusory allegations, unsupported by factual data, do not create a triable issue of fact.").  Even if the court disregards other Beck exhibits that Phillips

challenges, Beck's own statement and his book are unrebutted by evidence.  Rule 56(e) of the Federal Rules of Civil Procedure states that "an opposing party may not rely merely on allegations or denials."  Instead, any evidence that the opposition submits must be made on "personal knowledge."  Fed. R. Civ. P. 56(e).  Because Phillips fails to provide any evidence disputing Beck's publication date, there is no genuine dispute that his book was published in 2002.

2.   <u>Substantial Similarity.</u>

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  <u>Funky Films, Inc. v. Time Warner Entm't Co.</u>, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991)).  Because Phillips's ownership of a valid copyright is not disputed,[2] the court turns to the second inquiry.  "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'"  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 481 (9th Cir. 2000).

In the First Order, this court determined that there was a triable issue of fact on the issue of access and declined

_____

[2] <u>See</u> First Order at 8 n.3.

11

to grant summary judgment on that issue.  First Order at 9.  The parties have not raised additional evidence disputing that ruling.  This court, however, does not here reach the issue of access, as the more fundamental issue of substantial similarity between the two works trumps the access issue.  See, e.g., Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 206 (9th Cir. 1988) ("Because we find no substantial similarity, we decline to address the issue of access."); see also Funky Films, Inc., 462 F.3d at 1081.

A two-part analysis, consisting of an extrinsic and intrinsic test, is used to determine whether two works are substantially similar.  Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1174 (9th Cir. 2003).  At the summary judgment stage, courts apply only the extrinsic test, leaving the intrinsic test for the jury if the extrinsic test does not dispose of the similarity issue.  Funky Films, Inc., 462 F.3d at 1077.  Summary judgment is appropriate only if "no reasonable juror could find substantial similarity of ideas and expression, viewing the evidence in the light most favorable to the nonmoving party."  Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994).

In copyright infringement cases, the plaintiff bears the burden of proving substantial similarity.  Accordingly, "summary judgment for defendant is appropriate when plaintiff fails to make a sufficient showing that the ideas and expressive

elements of the works are substantially similar after defendant has properly identified in a motion for summary judgment that plaintiff has failed to do so." Frybarger v. Int'l Bus. Machs. Corp., 812 F.2d 525, 528 (9th Cir. 1987); see also Kouf, 16 F.3d at 1045 ("[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests.").

The extrinsic test looks to "measurable, objective elements," including "the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events." Shaw v. Lindheim, 919 F.2d 1353, 1359 (9th Cir. 1990). The intrinsic test does not look at specifically identifiable elements that are often best discussed by an expert witness. Instead, the intrinsic test is now seen as a purely subjective determination of whether two literary works are similar. Id. at 1358.

The extrinsic test is objective in nature and recognizes that an author's expression is protected, but not facts and ideas within a work. Funky Films, Inc., 462 F.3d at 1077; see also Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 741 (9th Cir. 1971) (stating that copyright protects expression of ideas, but not ideas themselves). When applying the extrinsic test for similarity, "[a] court 'must take care to inquire only whether 'the protectible elements, standing alone,

are substantially similar.'  Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination."  Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002) (quoting Williams v. Crichton, 84 F.3d 581, 588 (2d Cir. 1996)) (internal citations omitted)).

        Beck moves to dismiss Phillips's copyright infringement claim on the ground that there is "very little similarity" between the protectable elements of two works.  Second Motion at 7.  Specifically, Beck argues that there are only three areas that are even remotely similar in the two books: (1) "a few passages in the Jesus documents"; (2) the use of philosophers Buddha, Lao Tzu, Confucius, and Socrates; and (3) the title of the books.  Id. at 7-8.  Beck argues that any similarities in the "Jesus documents" results from both authors' reliance "on the same original Greek documents."  Id. at 7-8.  Moreover, Beck points out that Phillips's texts concerning the philosophers are dated 2007, and that Phillips's discussion of the philosophers draws from a version of Encheiridion dated 2004, two years after Beck's own copyright date.  Id. at 8.  Beck also argues that copyright law does not protect titles.  Id.  Lastly, Beck asserts that the copyright date of his publication was 2002.

        In opposing the motion, Phillips describes many alleged similarities between the two works.  Phillips claims that the two

14

works both contain epic poems regarding Jesus, and that Beck's poem is "written in the same elements as PHILLIPS' copyrighted poem . . . including a synthesis of facts from Matthew, Mark, Luke, and John, in one continuous epic poem; and, set forth in poetic recitation pattern which make them sound similar when read aloud." Second Opp. at 16. In support of this assertion, Phillips makes a comparison between the two works, underlining the similar passages. See id. at 18-19. Phillips also claims that Beck's poem concerning Buddha is "set in the same elements as PHILLIPS' copyrighted works and is a derivative which entered new facts into the same copyrighted elements and expression of PHILLIPS' work." Id. at 20. Phillips also points to the following general similarities:

> (1) Theme: wisdom, including health, nutrition, relationships, evolution, astronomy, biology, harmony, meditation, etc.; (2) Plot: recitation of wisdom in ancient and modern language; (3) pattern of biblical recitation poetry established from the beginning text, "Wisdom Code of the Second Coming," of Volume 1 in PHILLIPS' work; (4) individual epic poems; (5) two parallel overall continuous epic poems with synthesis of wisdom from around the world; (6) individual epic poems [sic], (7) Jesus epic poem with synthesis of Matthew, Luke, Mark, and John, (8) combination of philosophy and religion in biblical expression; (9) Characters: God; wisdom prophets . . . etc.

Id. at 15-16.

Many of the similarities that Phillips points to can be categorized as ideas, rather than expression, and are therefore not afforded copyright protection.  "It is well established that, as a matter of law, certain forms of literary expression are not protected against copying.  As noted earlier, the general idea for a story is among these."  Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985).

In Berkic, the Ninth Circuit found that although the two works at issue shared many similarities--including the "general story" of organized criminals who murder healthy individuals to sell their organs and "familiar scenes and themes . . . of modern American literature and film," such similarities were not within the bounds of copyright protection.  See id. at 1293-94; see also id. at 1293 ("No one can own the basic idea for a story.  General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind.").

Similarly, many of the elements that Phillips lists are general ideas, primarily focused around integrating religion and philosophy.  See Second Opp. at 15 ("introducing the unique copyrighted expression of combining the fields of philosophy and religion in biblical form [,] which had until PHILLIPS' work, been divided into two completely separate fields[]").

Although the "critical distinction between 'idea' and 'expression' is difficult to draw," the Ninth Circuit identifies

16

the pertinent inquiry as being "from how large an area of activity did Congress intend to allow the copyright owner to exclude others?"  Herbert Rosenthal Jewelry, 446 F.2d at 742.  In Herbert Rosenthal Jewelry, the court determined that "jeweled bee pins" were ideas, not subject to copyright protection because Congress would not have "intended to [] set aside [jeweled bee pins] in the public market without a patent."  Id.; see also Aliotti v. R, Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from such dolls.").  The combination of philosophy and religion into a new "bible" is too abstract and broad to be afforded copyright protection and is better classified as an "idea."  The Ninth Circuit has declined to afford protection to items that are far more concrete and specific than the concept of combining religion and philosophy into a new "bible."  In doing so, it has demonstrated its reluctance to fence off a subject matter from further comment and creation.  Affording copyright protection to the idea of combining religion and philosophy into a new "bible" would present similar problems, and this court declines to do so.

Many of the similarities that Phillips lists flow naturally from the general idea of combining philosophy and religion and so are not afforded copyright protection.  See Apple

Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994) ("[S]imilarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market."); see also Swirsky v. Carey, 376 F.3d 841, 850 (9th Cir. 2004) ("Under the *scenes a faire* doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright.").

Similarities in themes, which include wisdom, harmony, meditation, etc., the subject matter of Jesus Christ, and characters, necessarily flow from the combination of philosophy and religion.  When authors draw from the same sources, similarities between the works are inevitable, and such material is not protected under copyright.  Olson v. Tenney, 466 F.Supp.2d 1230, 1236 (D. Or. 2006) ("When 'common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff, there is no infringement.'") (quoting Alexander v. Haley, 460 F.Supp. 40, 45 (S.D.N.Y. 1978)); cf., Sega Enter. Ltd. v. Accolade, Inc., 977 F.2d 1510, 1524 (9th Cir. 1992) ("Works of fiction receive greater protection than works that have strong factual elements, such as historical or biographical works.").

Recognizing that it is only the expression, not the idea, that is protected, Phillips attempts to show the similarity between her expression of ideas relating to Jesus with Beck's expression. She says Beck, like her, writes a "Jesus epic poem." At pages 18 to 19 of her Second Opposition, she presents back-to-back passages from both authors' "Jesus epic poems." This court is unpersuaded that the passages demonstrate what Phillips calls "plagiarism." The similarities are best explained by the common source of the Bible. Phillips does not own the idea of writing about Jesus in verse. In <u>Olson</u>, the court reviewed works that both drew from the same Biblical narrative, noting that such source material was in the "public domain," and did not give rise to copyright infringement. <u>Olson</u>, 466 F.Supp.2d at 1237. The similarities Phillips relies on are of only "unprotectable ideas."

Out of the thirty-three chapters in Beck's work, only five concern similar subject matter to those found in Phillips's work. The similarity in subject matter is easily explained from the authors' use of both philosophy and religion: Lao Tzu, Confucius, Buddha, Socrates, and Jesus Christ. Moreover, of these five overlapping subject areas, only two are from Phillips's 1999 version, with the remaining three coming from her 2007 version. Any claim of similarity that Phillips has is limited to the subject matters appearing in her 1999 version--

19

Buddha and Jesus Christ--as there is no genuine issue of fact as to whether Beck's book was written in 2002.

In comparing Phillips's and Beck's passages on Buddha and Jesus Christ, this court finds insufficient similarity to support Phillips's copyright claim.  The passages are written in differing levels of specificity, employ different numbering systems, and, when read aloud, do not sound similar.  By way of example, the court points to an excerpt from Phillips's book:

> NOW there was in the time of King Herod,
> A divine homemaker, Elisabeth,
> And humble temple priest, Zacharias.
>
> 2 They were a spiritual wife and husband,
> Following the guidance of spiritual God.
>
> 3 And now they wanted a spiritual child,
> But Elisabeth never before gave birth,
> And was past many years to bare a child.
>
> 4 Zacharias had duties during service,
> As priest in the temple of spiritual God.
>
> 5 Zacharias would light the divine incense;
> As was the custom for prayer and worship.
>
> 6 There were many in the spiritual temple,
> When behind the altar went Zacharias,
> To light the candles of divine incense.

<u>Wisdom Bible of God</u> at 227-28.

Beck's passage concerning this same story can be contrasted:

> In the days of Herod, King of Judea,
> there was a priest named Zacharias of the Abijah division,
> and his wife Elizabeth was from the daughters of Aaron.
> They were both correct before God,

20

> proceeding blamelessly in all the commandments
> and requirements of the Lord.
> They had no child, because Elizabeth was barren;
> and they were both advanced in their days.
> It happened that in the order of his division
> while he served as priest before God,
> according to the custom of the priesthood
> it was his lot to burn incense
> entering the temple of the Lord,
> and all the assembly of the people
> were praying outside at the hour of the incense.

Wisdom Bible From Ancient China at 502. Differences exist in spelling, style, rhythm, and wording--in fact, the similarities that do exist are limited to the storyline.

The poems are not written in the same meter, are not divided into verses in the same way, and use different descriptions. Even greater differences exist in the passages concerning Buddha. Again, when the court looks at such objective criteria as rhythm, word choice, and sequence of ideas, the differences in the protectable elements outnumber the similarities.

Phillips does not show "substantial similarity" between the text of her Wisdom Bible of God and Beck's Wisdom Bible From Ancient China that establishes copyright infringement. Beck's motion for summary judgment on Phillips's copyright infringement claim concerning the text of Beck's Wisdom Bible From Ancient China is granted.

B.   <u>Trademark Infringement and Unfair Competition.</u>

Beck also moves for summary judgment on Phillips's claims for trademark infringement and unfair competition, arguing that Phillips's title should not be granted trademark protection because her book is not "broadly known," and has not acquired "secondary meaning."  Beck further argues that the two "Wisdom Bible" titles are "easily differentiated."  <u>See</u> Second Motion at 10-11.

At the hearing on this matter, Beck contended that he did not have the requisite intent to cause confusion.  Beck appears to be attacking the validity of Phillip's trademark and also disputing the likelihood of consumer confusion.  Phillips responds that her work is indeed "broadly known" and has been used in commerce since 1999, and that use of a similar title is likely to cause public confusion.  <u>See</u> Second Opp. at 10-11, 14-15.  Because the court determines that Phillips has not established a valid trademark in the title of "Wisdom Bible," the court grants summary judgment to Beck on the trademark infringement and unfair competition claims.

A plaintiff asserting trademark infringement must establish both "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark."  <u>Dep't of Parks & Recreation</u>

for the State of Cal. v. Bazaar Del Mundo, Inc., 448 F.3d 1118,
1124 (9th Cir. 2006).  Because a plaintiff needs to prove both
factors, courts can grant summary judgment to a defendant who can
disprove either factor.  See Thane Int'l Inc. v. Trek Bicycle
Corp., 305 F.3d 894, 901 (9th Cir. 2002) ("[A] district court may
grant summary judgment . . . if 'no genuine issue' exists
regarding likelihood of confusion."); see also Yellow Cab Co. of
Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d at 928 (9th
Cir. 2005) (noting that the "validity of the trademark is 'a
threshold issue'").  As established in the First Order, the tests
for trademark infringement and unfair competition look to the
same considerations.  See Brookfield Commc'ns, Inc. v. W. Coast
Entm't, 174 F.3d 1036, 1046-47 (9th Cir. 1999); Joujou Designs,
Inc. v. Jono Ligne Internationale, Inc., 821 F. Supp. 1347, 1353
(N.D. Cal. 1992).  The court will therefore analyze both claims
under this two-pronged test.

When a plaintiff has an unregistered trademark, the
presumption of validity is inapplicable, and the plaintiff must
establish its protectable interest.  See Yellow Cab Co. of
Sacramento, 419 F.3d at 928.  Trademarks fall into five
categories: "(1) generic; (2) descriptive; (3) suggestive;
(4) arbitrary; and (5) fanciful."  Id. at 927.  The latter three
are automatically entitled to protection, as they require a
"mental leap" between the mark and the object referenced.

<u>Filipino Yellow Pages, Inc., v. Asian Journal Publications, Inc.</u>, 198 F.3d 1143, 1147 n.3 (9th Cir. 1999).  By contrast, generic and descriptive terms "refer[] to the type or species of the product at issue."  <u>Rudolph Int'l, Inc., v. Realys, Inc.</u>, 482 F.3d 1195, 1197 (9th Cir. 2007).  Trademark protection does not extend to generic marks, and only extends to descriptive marks that have acquired "secondary meaning" in the minds of consumers.  <u>Id.</u> at 1197-98.

Neither party suggests that the "Wisdom Bible" title falls under any of the three categories that are automatically entitled to trademark protection.  Beck argues that Phillips's book is not "broadly known" and that it fails to "create[] a separate commercial impression apart from the complete title."  Second Motion at 10, 12.  This court reads Beck's motion as contending that the "Wisdom Bible" title is descriptive.  <u>Cf.</u> Second Motion at 10 ("I chose the title 'Wisdom Bible' because it is perfect for that collection of ancient wisdom from the great religions and philosophies.").[3]  Phillips responds that she has had an "exclusive" trademark since 1999 and that her work is

---

[3]Beck may also be arguing that the "Wisdom Bible" title is generic.  Although this court acknowledges that Phillips has the burden of establishing nongenericness if Beck is indeed asserting genericness, the lack of clarity on Beck's part as to any claim of genericness excuses Phillips's silence on this point.  The court questions whether genericness applies in any event, as the nature of the book is not immediately self-evident from the tile.  The court further notes that the matter is moot in light of the court's ruling as to descriptiveness.

"broadly known and accessed throughout the world on the internet."  Second Opp. at 10-11.

This court agrees with Beck that the title is descriptive.  The books are compendiums of age-old wisdom, including statements from religious texts, so they are "bibles" filled with "wisdom," or "Wisdom Bibles."

A descriptive mark is protected only if it has acquired secondary meaning.  <u>Rudolph Int'l</u>, 482 F.3d at 1197-98.  Secondary meaning is acquired when consumers associate the trademark with the trademark owner's goods in commerce.  <u>See Filipino Yellow Pages</u>, 198 F.3d at 1147.  Establishing secondary meaning requires a consideration of:

> (1) whether actual purchase[r]s of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark and, (4) whether use of the claimed trademark has been exclusive.

<u>Levi Strayss & Co. v. Blue Bell, Inc.</u>, 778 F.2d 1352, 1358 (9th Cir. 1985) (alteration in original).  "Secondary meaning is a question of fact, so to survive summary judgment[,] [the party bringing the trademark claim] was required to come forward with enough evidence of secondary meaning to establish a genuine dispute of fact."  <u>Japan Telecom, Inc., v. Japan Telecom America</u>, 287 F.3d 866, 873 (9th Cir. 2002) (internal citation omitted).

In _Japan Telecom_, the claimant submitted a declaration from the company's president along with two letters and six declarations from business owners who "personally" knew the claimant company as a means of demonstrating actual confusion that resulted from the defendants' use of a similar mark.  _Id._ at 873-74.  The court found such evidence insufficient to establish that buyers had developed a "mental recognition" of the trade name, as the declarations came from those who personally knew Japan Telecom's President.

Similarly, in _Filipino Yellow Pages_, the claimant corporation submitted a declaration from its founder and President, asserting actual confusion.  Finding the evidence inadmissible, the court stated that, even if admissible, such evidence would be insufficient because "[e]vidence of secondary meaning from a partial source possesses very limited probative value."  _Filipino Yellow Pages_, 198 F.3d at 1152.  Even when, in a different case, a claimant submitted declarations from impartial sources regarding a company's history, customer confusion, and advertising data, the Ninth Circuit found a genuine issue of fact as to secondary meaning.  _Yellow Cab Co._, 419 F.3d at 930.  Here, Phillips has only provided the court with unsupported assertions regarding the establishment of secondary meaning for her trademark.  _See_ Second Opp. at 10-11.  In addition to being factually unsupported, none of these assertions

directly addresses the considerations relevant to establishing secondary meaning.

As Phillips does not meet her burden of establishing secondary meaning, this court concludes that the "Wisdom Bible" title is not protected as a trademark and cannot be the subject of an unfair competition claim.

Even if Phillips did establish secondary meaning, she could not prevail on her trademark and unfair competition claims without showing that "customers are likely to be confused about the source or sponsorship of the products." See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1136 (9th Cir. 2006).  An eight-factor test guides this assessment:

> (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets. Not all of the factors are of equal importance or applicable in every case.

Id. at 1136 n.9.  The court need not reach this inquiry given the lack of secondary meaning.

V.        CONCLUSION.

In light of the foregoing, the court grants Beck's Second Motion for summary judgement.  Beck is granted summary judgment on Phillips's claims that Beck's Wisdom Bible From

<u>Ancient China</u> infringed on her copyright and her trademark rights in her <u>Wisdom Bible of God</u> and constituted unfair competition.

This order leaves for further adjudication claims by Phillips in her Amended Complaint that Beck and World Peace Communications are liable for infringing on Phillips's <u>Stoic Encheiridion</u> in Beck's <u>Life as a Whole</u> publication, and that by quoting from his <u>Wisdom Bible From Ancient China</u>, Beck has included material from Phillips's <u>Wisdom Bible of God</u> in the Appendix of Beck's <u>Confucius and Socrates: Teaching Wisdom</u>.[4] Phillips may also be complaining about Beck's <u>Art of Gentle Living</u>, although the claim with respect to that publication is less than clear.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 9, 2007.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

<u>**Phillips, et al. v. Beck, et al.**</u>**, Civ. No. 06-00628 SOM/KSC; ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT.**

---

[4]Phillips's claim regarding the Appendix may be precluded by the present order, but, as the matter is not before this court on Beck's Second Motion, this court, in fairness to Phillips, does not here address it.